UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRIENDS OF LYDIA ANN CHANNEL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-514 |
| | § | |
| U.S. ARMY CORPS OF ENGINEERS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMSS

On this day came on for consideration the Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion to Dismiss")(docket # 66) filed by the Intervenor-Defendant, Lydia Ann Channel Moorings, LLC ("LAC Fleet"). The Court, having considered the pleadings and briefs on file herein, finds that the Motion to Dismiss should be denied for the reasons stated below.

**I.      Background**

Plaintiff, Friends of Lydia Ann Channel ("Plaintiff") seeks declaratory and injunctive relief against LAC Fleet and the United States Army Corps of Engineers ("USACE") regarding USACE's issuance of a Letter of Permission ("LOP") for a barge mooring facility in the Lydia Ann Channel and LAC Fleet's continuing operation of the facility. The facility as completed was beyond the scope of the facility proposed by LAC Fleet in the LOP application. USACE subsequently revoked the LOP and ordered removal of the mooring dolphins. Despite revocation of the LOP, LAC Fleet continues to operate the facility. Plaintiff alleges violation of the Administrative Procedure Act, 5 U.S.C. §§701-06 (the "APA"); the National Environmental Policy Act, 42 U.S.C. §§4321-47 ("NEPA"); the White House Council on Environmental quality's NEPA implementing regulations, 40 C.F.R. §§1500-08 (the "NEPA Regs"); USACE's

regulations, 33 C.F.R. Parts 230, 320, 322, and 325; and the Endangered Species Act ("ESA"), 16 U.S.C. §§1531-1544 ("ESA"). LAC Fleet filed its Motion to Dismiss pursuant to Rule 12(b)(1), F.R.Civ.P., alleging the Court lacks subject matter jurisdiction because Plaintiff's claims are moot, unripe, and Plaintiff lacks standing. LAC Fleet further alleges that the Complaint should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6), F.R.Civ.P.

## II. Jurisdiction

The Court has original jurisdiction and the authority to grant the relief requested pursuant to 28 U.S.C. § 1331 (federal question) because it arises under the laws of the United States: 16 U.S.C. §1531 *et seq.* (ESA), 5 U.S.C. §§701 *et seq.* (APA), and 42 U.S.C. § 4321 *et seq.* (NEPA). The Court also has jurisdiction pursuant to 28 U.S.C. § 1361 because the suit is brought against officers of the United States to require them to perform their duties under federal law. This Court has the authority to grant the relief requested pursuant to 5 U.S.C. § 703, 28 U.S.C. § 2201 *et seq.*, and 33 U.S.C. §§ 1319(d) and 1365(a).

Plaintiff has satisfied the ESA's jurisdictional requirements for bringing this suit. Pursuant to 16 U.S.C. § 1540(g)(2)(A)(i), Plaintiff notified the USACE Defendants of their violations of the ESA, and of Plaintiff's intent to sue under the ESA for those violations by certified letter dated and postmarked September 9, 2015 ("Notice Letter"). Plaintiff also gave notice of its intent to sue by sending the Notice Letter, on September 9, 2015, to Sally Jewell, Secretary of the Interior, and Penny Pritzker, Secretary of Commerce. More than sixty days have passed since the Notice Letter was served, and the violations complained of are continuing and are reasonably likely to continue to recur. The named Defendants have not taken any actions to remedy or prevent continued violations of the ESA. Neither the Secretary

of the Interior nor the Secretary of Commerce have commenced any action to impose a penalty pursuant to 16 U.S.C. § 1540(a), and the United States has not taken any action to prevent continued violations of the ESA.

LAC Fleet submitted to this Court's jurisdiction because it sought to be and is a party to this lawsuit by its own choice. LAC Fleet waived and is not entitled to a sixty-day ESA notice of intent to sue because it voluntarily sought and was granted permission by the Court to intervene in this lawsuit in order to protect its financial interests, defend its operations, and provide its own experts. *See Natural Resources Defense Council v. Kempthorne,* 539 F. Supp. 2d 1155, 1165 (E.D. Cal. 2008).

### III. Standing

Article III of the U.S. Constitution provides that federal judicial power is restricted to "Cases" and "Controversies." U.S. Const. Art. III, § 2. It is well-established that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). These are: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury. *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan,* 504 U.S. at 560-61). The Plaintiff must meet its burden to establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 746.

The ESA expressly authorizes citizen suits against any "person" alleged to be responsible for a "take." The ESA provides that any person may commence a civil suit on his own behalf– (A) to enjoin any person, including the United States and its agencies, who is alleged to be in violation of ESA provisions or regulations; (B) to compel the Secretary to enforce the provisions

concerning the taking of any resident endangered species or threatened species within any State; or (C) against the Secretary where there is an alleged failure of the Secretary to perform any nondiscretionary act or duty. 16 U.S.C. § 1540(g)(1); *see also Tennessee Valley Auth*., 437 U.S. 153, 181 (1978). The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any ESA provision or regulation, or to order the Secretary to perform such act or duty, as the case may be. 16 U.S. C. § 1540(g). Although the ESA provides for citizens suits, the ESA plaintiff must satisfy the jurisdictional requirements of standing. *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

At the pleading stage, as here, a plaintiff need only make a "short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1), (2); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Consequently, "on a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of [their] standing." *Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).

### A. Injury in fact.

Environmental plaintiffs can establish "injury in fact" by showing that the challenged conduct will reduce their opportunities to observe wildlife: "The desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for purposes of standing." *Lujan*, 504 U.S. at 562-63. "It is clear that the person who observes or works with a particular animal threatened by [the challenged action] is facing perceptible

harm, since the very subject of his interest will no longer exist." *Id.* at 565. The Court in *Lujan* recognized that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing. But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 562-63. In addition, in NEPA and other environmental actions, "[e]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

  Plaintiff has alleged injury in fact. In its First Amended Complaint, Plaintiff specifically states that the USACE's authorization of, and LAC Fleet's construction and ongoing operation of its industrial barge fleeting facility, have caused and are causing Plaintiff and its members irreparable environmental harm in the form of significant impacts to the riparian and aquatic environment of the Lydia Ann Channel and Redfish Bay State Scientific Area, degradation of habitat for fish, birds, marine mammals, and other wildlife, and are adversely affecting listed endangered species and their habitat." (D.E. 64 at 14). In addition, the First Amended Complaint also specifies that prior to the USACE's authorization of, and LAC Fleet's construction and ongoing operation of its industrial barge fleeting facility, Plaintiff's members derived substantial benefit and enjoyment from the Lydia Ann Channel and its environs in fishing, hunting, boating, swimming, wildlife observation and photography, and other similar activities. (D.E.64 at 16).  Members of Plaintiff have been harmed because the authorization of, the construction of, and the ongoing operation of this

industrial barge facility accommodating hazardous materials in the middle of one of the most ecologically and recreationally significant waterways along the Texas gulf coast has displaced and significantly interferes with public recreational activities such as fishing, swimming, hunting, boating, and birding, and constitutes an ongoing threat to both navigation and to public health and safety. (D.E. 64 at 13-14, 16-17).

The affidavit of James King (D.E. 90, Ex. 1) provides an example of how Plaintiff members have suffered injury to their environmental and recreational interests. These allegations demonstrate that Plaintiff's members "use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc.*, 528 U.S. at 183.

For pleading, general factual allegations of injury resulting from a defendant's conduct suffice, because on a motion to dismiss, the court presumes that the general allegations embrace those specific facts that are necessary to support the claim. *Lujan*, 504 U.S. at 561 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Lac Fleet contends that Plaintiff has not alleged facts "showing that a concrete and particularized injury to its interests is imminent." (D.E. 66 at 10-11). For standing, an injury must be "actual or imminent." *Lujan*, 504 U.S. at 560. Plaintiff has alleged and suffered actual injury to its members' environmental and recreational interests based on the loss of recreational opportunities, injury to environmental and cultural interests, and harm and harassment of federally-listed endangered species. These types of injuries suffice to confer standing in ESA and APA cases. See, e.g., *Lujan*, 504 U.S. at 562-63.

LAC Fleet further contends that, because Plaintiff has not specifically identified any past take or past injury to habitat, Plaintiff lacks standing to assert its claims. This contention

is incorrect. "[T]hat an injury is couched in terms of future impairment rather than past impairment is of no moment. The Supreme Court has expressly held that a 'threatened injury' will satisfy the injury in fact requirement for standing." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 556 (5th Cir. 1996) (citing *Valley Forge Christian College*, 454 U.S. 464, 472 (1982)). In this case Plaintiff has shown that its members have suffered and continue to suffer injury to both their environmental and recreational interests. In addition, Plaintiff has demonstrated that the anticipated future take of federally-listed species in violation of Section 9 of the ESA will result in additional injury to the recreational and aesthetic interests of Plaintiff's members.

### B. Causal connection between injury and conduct complained of.

Causation exists in the present case. Plaintiff's and its members' injuries are the direct result of the USACE's issuance of the LOP authorizing the LAC Fleet to construct and operate the LAC Fleet industrial barge fleeting, service, and fuel sales facility, as well as LAC Fleet's ongoing operations following revocation of the LOP. The Supreme Court explained in *Lujan* that causation exists if there is "a causal connection between the injury and the conduct complained of" and the injury is fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560. But for USACE's use of the LOP process for the project and Lac Fleet's ongoing barge fleeting operations in defiance of USACE's revocation of the LOP, the now-unauthorized and unpermitted structures would not be located in the Lydia Ann Channel and LAC Fleet's current operations would not be causing continued harm to Plaintiff and its members. Thus the required causal connection between the actions of both the USACE and LAC Fleet and the past and potential harm to Plaintiff and its members exists.

## C. Likelihood that a favorable decision will redress the injury.

A plaintiff establishes redressability when "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181; *Lujan*, 504 U.S. at 561. The Supreme Court also explained that the relevant question is simply "whether a plaintiff personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (internal quotation marks omitted). "When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction - and perhaps on the response of others as well." *Lujan*, 504 U.S. at 562.

Redressablility exists in this case because Plaintiff's requested declaratory relief from the Court would establish the USACE's violations of the NEPA, the APA, and the ESA, and the LAC Fleet's violations of the ESA. Plaintiff's requested relief would also determine the USACE's duties under the NEPA, the APA, and the ESA, and LAC Fleet's duties under the ESA. With respect to declaratory judgments, the Supreme Court has stated that, "the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). In this case, the parties' dispute about USACE's and LAC Fleet's duties under applicable federal law establishes the predicate for declaratory relief: "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty*

*Co., v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); accord, e.g., *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Of course, a declaration does not alone change facts on the ground, but the Supreme Court does not require any certain outcome to establish redressability for claims based on declaratory relief. The Supreme Court has found redressability sufficient for declaratory relief even when a judgment would not be coercive and when any relevant change would require a "discretionary" determination by government officials. *Franklin v. Massachusetts*, 505 U.S. 788, 801-03 (1992).

Redressability also exists in this case because Plaintiff's requested injunctive relief would require LAC Fleet to cease their unpermitted operations, remove the unauthorized and unpermitted mooring dolphins, and restore the area in Lydia Ann Channel that has been damaged by their activities.  Plaintiff's requested injunctive relief would also require that the USACE ensure that LAC fleet cease its illegal operations, remove the unauthorized and unpermitted mooring dolphins, and restore the area in Lydia Ann Channel that has been damaged by their activities. The Supreme Court has rejected  "draconic interpretation[s] of the redressability requirement." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). A plaintiff "satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Id.*(emphasis in original). The mere fact that Plaintiff may not prevail on every request for relief by no means precludes a finding that its injury may be redressed in some manner by a favorable decision.  Plaintiff's requested injunctive relief would clearly redress Plaintiff's and its members' injuries.

### D. Associational Standing

Plaintiff has standing because its individual members have standing. (See D.E. 90, Ex. 1, Affidavit of James King). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc.,* 528 U.S. at 181. As discussed above, Plaintiff has satisfied the standing elements of injury in fact, redressability, and causation. The injury to its members is fairly traceable to the actions of the USACE and LAC Fleet. The interest in the conservation of the recreational use and ecological importance of the Lydia Ann Channel is germane to Plaintiff's purpose and there is no indication that any claim or relief requires participation of Plaintiff's individual members.

In its Motion to Dismiss, LAC Fleet appears to have confusion regarding Article III standing as it applies to citizen suits under Section 11(g) of the ESA. LAC Fleet asserts that Plaintiff must "identify" past take or "real injury" to habitat in order to have "standing to assert its claims." This position has no bearing on Plaintiff's claims brought under the NEPA and the APA. Nor is it applicable to Plaintiff's ESA claims in this case.

The United States Supreme Court has recognized that the ESA's citizen suit provision is "an authorization of remarkable breadth" which Congress intended to be a central and integral part of the ESA's enforcement. *Bennett v. Spear*, 520 U.S. 154, 164-65 (1997) ("the obvious purpose of the [citizen suit provision] is to encourage enforcement by so-called 'private attorneys general'"). In enacting the ESA, Congress intentionally created a broad citizen suit provision to allow private enforcement to further the important statutory objectives of the Act. 16 U.S.C. §1540(g)(1)(A) (authorizing a private right of action "to

enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof."); *see also Bennett*, 520 U.S. at 164-65. As noted above, for pleading, general factual allegations of injury resulting from the defendant's conduct suffice, because on a motion to dismiss, the court presumes that the general allegations embrace those specific facts that are necessary to support the claim. *Lujan*, 504 U.S. at 561 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). In this case, Plaintiff has sufficiently pled all of the elements of a cause of action the ESA.

### IV. Dismissal under F.R.C.P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the grounds for entitlement to relief, including factual allegations that when assumed to be true raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). In other words, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombly*, 550 U.S. at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.,* at 555. In its First Amended Complaint, Plaintiff has stated causes of action under the NEPA, the APA, and the ESA upon which relief can be granted.

## V.  Mootness

LAC Fleet specifically challenges Plaintiff's Counts I, II, and III. LAC Fleet argues that, because the USACE has revoked the LOP, there is no longer any case or controversy, and Plaintiff's claims are moot. While it is true that these Counts challenge the now-revoked LOP, the facts in this case and applicable federal law do not mandate dismissal for mootness. The Constitutional mootness doctrine is grounded in the Article III requirement that federal courts only decide "actual, ongoing cases or controversies." *Building & Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1491 (10th Cir. 1993) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "However, the conditions under which a suit will be found constitutionally moot are stringent. Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 1491 (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

"[A] case properly brought in the first instance only becomes moot where interim relief or events have completely eradicated the effects of the alleged violation." *Id.* (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). A case becomes moot only when "intervening events make it impossible to grant the prevailing party effective relief." *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citing *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996)). It is well established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of the power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). In *W.T. Grant Co.*, the Supreme Court recognized that "[a] controversy may remain to be settled in such circumstances. *Id.*

Moreover, if a defendant is "free to return to his old ways … this, together with a public interest in having the legality of the practices settled, mitigates against a mootness conclusion. For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." *Id.* (Internal quotes omitted). The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." *Id.* at 633.

There are ongoing controversies in the present case: (i) Plaintiff has a legally cognizable interest in the outcome; (ii) the USACE's revocation of the LOP has not eradicated the effects of the USACE's and LAC Fleet's violations of the NEPA, the APA, and the ESA; and (iii) this Court still has the power to grant the relief requested by Plaintiff. Most notably, this case is not moot because the USACE and LAC Fleet could easily "return to their old ways" without the Court's involvement. In fact, in its Motion to Dismiss, LAC Fleet has expressly notified this Court that it fully intends to work closely with the USACE to repeat these "old ways" by seeking to "continue its operations at the facility," and thus repeat the wrong done to Plaintiff and the public.

## VI. Ripeness

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003), citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149 (1967); accord, *Ohio Forestry*

*Assn., Inc. v. Sierra Club,* 523 U.S. 726, 732–733 (1998). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. *Id.,* citing, *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57, n. 18, (1993).

To determine whether an administrative action is ripe for judicial review, a court must examine "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id*., citing, *Abbott Laboratories, supra,* at 149.

LAC Fleet argues that because it submitted its Removal Plan, a new administrative process was begun that precludes any oversight by the Court. LAC Fleet asserts that Plaintiff's claims are unripe and the court has no jurisdiction until USACE makes a final agency decision regarding the Removal Plan. However, the "Removal Plan" actually urges non-removal and permission to continue operating. LAC Fleet interprets USACE's Notice of Revocation to mean that USACE will consider alternatives to removal of the facility. The Court interprets it to mean USACE wants to know LAC Fleet's preferred method of removal as well as any alternative methods of removal, not alternatives to removal. LAC Fleet's Removal and Restoration Plan & Statement of Alternatives devotes only 2 paragraphs to address methods of removal and no proposal for restoration. The remaining 112 pages argue in favor of allowing the facility to remain in place and continue operating.

USACE's counsel admitted at the hearing on November 15, 2016, that it is considering whether to allow the facility to remain and continue operation, which suggests that LAC Fleet and USACE may continue to violate NEPA, the APA, and the USACE Regulations. Such actions negate LAC Fleet's ripeness argument. At a minimum, LAC Fleet's unpermitted operation during USACE's review is certainly ripe for the Court's determination.

## VII. Conclusion

For the reasons stated herein, LAC Fleet's Motion to Dismiss is hereby DENIED.

SIGNED and ORDERED this 22nd day of November, 2016.

_____
Janis Graham Jack
Senior United States District Judge